UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                              )
CRYSTAL LITZ, and all others          )
similarly situated,                              )
                                                              )
                           Plaintiffs,          )
                                                              )
             v.                                          )   Civ. A. No. 11-cv-10693
                                                              )
THE SAINT CONSULTING                   )
GROUP, INC., P. MICHAEL SAINT   )
and PATRICK FOX,                              )
                                                              )
                           Defendants.       )
_____)

**PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDER
AND TO ISSUE CORRECTIVE NOTICE**

**I.   FACTS**

Plaintiffs have brought this motion seeking a protective order and corrective notice in order to remedy improper, unauthorized and flagrantly misleading communications between Defendants and the putative class members on whose behalf Plaintiffs filed a motion seeking court-approved notice. *See* Docket Entry 53 (hereafter, "D.E. __"). As Plaintiffs recently learned, less than 48 hours after Plaintiffs filed their motion, Defendant P. Michael Saint ("Saint"), Director of Defendant The Saint Consulting Group ("TSCG") sent an email to all Project Managers – the putative class members in this case – employed by Defendants. In Saint's email, which was purportedly to provide employees with "alumni news", he states as follows:

    Dear Friends,

    ***

1

> In March 2010, we fired Crystal Litz for cause. A couple of weeks later, her lawyer sent us a letter demanding we pay her $3 million or face lawsuits and negative stories in the newspapers. We refused to pay and she has fulfilled her threats, filing first a sex discrimination suit that is still pending in the Massachusetts Commission against Discrimination, and now a federal suit claiming she is owed overtime, despite averaging over $200,000 a year during her five years with us.
>
> This overtime claim was originally brought by Leigh Mayo in Chicago. Crystal Litz has been joined by former project manager Amanda Payne, who was fired four years ago and against whom we have secured a court injunction and order to pay us $48,000 in costs.
>
> We have always treated our employees fairly, paid them generously and followed all employment laws. We deny that they were eligible for overtime and intend to vigorously defend the company. Neither Litz, nor Mayo, nor Payne ever claimed they were owed overtime while they were at Saint Consulting.
>
> If you have any questions or if you are contacted, please feel free to contact me or Jeff Gould.[1]
>
> Thank you,
>
> Mike Saint

Exhibit A, Email from Michael Saint dated May 18, 2011.

The asserted class in this collective action for unpaid overtime under the Fair Labor Standards Act ("FLSA") is comprised of current and former Project Managers employed by Defendants nationwide. All of the proposed class members who received Saint's communication are dependent upon Defendants for income. Aside from notifying these persons of this litigation outside the supervision of this Court, Saint's communication is wholly improper in several fundamental respects.

First, Saint's depiction of the applicable law and merits of this litigation is totally inaccurate, false and misleading. Second, Saint all but explicitly promises to retaliate against anyone who chooses to join this litigation. Third, Saint instructs putative class members to

---

[1] Jeffrey R. Gould is TSCG's General Counsel.

contact him or his attorneys – parties adverse to the class members – upon receipt of court-approved notice. Fourth, Saint flagrantly discloses confidential settlement communications in direct violation of of the Federal Rules of Evidence. Fed.R.Civ.P. 408(a). Finally, Saint blatantly violates a confidentiality agreement executed by the parties in this case.[2]

Even more compelling is the information Saint chose to omit. For example, Saint failed to provide a balanced description of the nature of this lawsuit, that Project Managers should seek independent legal counsel, that Defendants' interests are adverse to the interests of class members, and any information on how to vindicate their rights in this action.

In sum, Saint's email is clearly intended to confuse and discourage potential class members from asserting their rights to unpaid wages. Given the established case law limiting or precluding communications by an employer with prospective class members, especially in the absence of substantial safeguards, Saint's communication is improper. Moreover, Saint's failure to comply with the Federal Rules or adhere to his own confidentiality agreement presents a significant likelihood of future misconduct. Accordingly, Plaintiffs request that this Court enter a protective order preventing any Defendant or their representatives from having any communications related to this litigation with putative class members and to issue corrective notice, in a form to be approved by the Court, which redresses Defendants' improper communication.

## II. APPLICABLE LAW

District courts are empowered with relatively broad discretion to limit communications between parties and putative class members and current class members. *See Gulf Oil v. Bernard*, 452 U.S. 89, 123 & 126 (1981); *Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193, 1201-03

---

[2] Because the agreement is confidential, Plaintiffs will submit a copy for this Court's *in camera* review as "Exhibit B."

(11th Cir.1985) (recognizing district court's authority to police class member contacts and to prohibit defendant from engaging in unsupervised, unilateral communications with plaintiff class members to solicit exclusion requests from Rule 23 class); *Jones v. Casey's General Stores,* 517 F.Supp.2d 1080, 1088 (S.D.Iowa 2007) ("[T]his Court has relatively broad discretion in limiting communications with putative collective members when such communications cross the boundaries of propriety, including when the communications are unbalanced, misleading, or factually inaccurate."); *Maddox v. Knowledge Learning Corp.,* 499 F.Supp.2d 1338, 1342-43 (N.D.Ga.2007) (observing that district courts in § 216(b) actions rely on broad case management discretion to allow pre-notice communications "while actively limiting misleading statements in such communications"); *Belt v. Emcare, Inc.,* 299 F.Supp.2d 664, 667 (E.D.Tex.2003) ("As in Rule 23 class actions, courts have the authority to govern the conduct of counsel and parties in § 216(b) collective actions."). Indeed, this Court has a duty to protect class members from "unauthorized, misleading communications from the parties or their counsel." *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d. Cir. 1979).

Courts recognize that an employment at-will relationship is fundamentally a coercive one because of the employee's dependence on his work for income. *See Bublitz v. E.I. DuPont de Nemours*, 196 F.R.D. 545, 548 (D. Iowa 2000); *Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 678 (N.D. Ga. 1999). Especially in an employment setting, the consequences of a defendant's unsupervised communications with putative class members may be severe. As the Court in the seminal case of *Kleiner* stated:

> 'Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent. . . ***on the basis of a one-sided presentation of the facts, without opportunity for rebuttal***. The damage from misrepresentations could well be irreparable.'

*Kleiner*, 751 F.2d at 1203 (emphasis added).

Improper communications of the kind engaged in by Defendants here present a grave danger of "chilling of the rights of the potential class members or . . . pressur[ing] … them unduly to opt out of the class . . . or . . . creating confusion." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 602 (2d Cir. 1986) (quoting *Gulf Oil Co.*, 452 U.S. at 123, 126).

It is well-established that coercive communication between a defendant and potential class members are improper and may be enjoined without any legitimate First Amendment issue. "The test for whether a party with or without aid of its counsel, has had impermissible contact with potential members of the plaintiff class, is whether the contact is coercive, misleading, or an attempt to affect a class member's decision to participate in the litigation." *Carnegie v. H&R Block, Inc.*, 687 N.Y.S.2d 528 (N.Y. Sup. Ct. 1999); *Haffer v. Temple Univ.*, 115 F.R.D. 506, 513 (E.D. Penn. 1987) (Defendant shall not be permitted to benefit from their improper communications).

A party may be entitled to relief from contacts by an adverse party with class members, if the moving party can show (1) "that a particular form of communication has occurred or is threatened to occur"; and, (2) "that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation." *Cox Nuclear Medicine v. Gold Cup Coffee Services, Inc.,* 214 F.R.D. 696, 697-98 (S.D.Ala.2003).

Based on improper communications, courts have prevented a party from communicating with current or putative class members about the litigation. *See Bowens v. Atl. Maint. Corp.,* 546 F.Supp.2d 55, 62 (E.D.N.Y 2008) (discussing order stating: "Defendant agree[s] not to discuss litigation with putative class members."). Indeed, "Federal Courts have routinely exercised their discretion to restrict communication in class actions, in both the Rule 23 and § 216(b) settings, where a party has engaged in misleading or coercive behavior with respect to prospective class

5

members." *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1226-27 (S.D. Ala. 2008), reconsideration denied (Jan. 23, 2009); *see also Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1378-79 (S.D. Ga. 2009).

### III.     ARGUMENT

Here, the communications between Saint and the putative class members are clearly misleading and coercive. First, Saint makes inaccurate assertions about the applicable wage laws and Defendants' compliance. He falsely represents that hourly-paid employees, like the Project Manager class members, are somehow exempt from overtime if they "average" a certain income during their employment. *See* Ex. A. This notion is categorically false. By definition, employees paid by the hour are entitled to overtime at the rate of time and one-half for all time worked in excess of 40 hour in a workweek <u>regardless</u> of their total annual compensation. 29 U.S.C. § 207(a)(1).[3] Saint's false statements about the law are plainly designed to cast the Named Plaintiff and her counsel in a negative light and falsely portray this case as frivolous.

Second, Saint is transparently attempting to intimidate Project Managers against vindicating their rights. He emphasizes that Defendants fired Named Plaintiff Crystal Litz, and fired and secured a substantial monetary judgment against opt-in Plaintiff Amanda Payne. *See* Ex. A. These facts have no bearing whatsoever on an employee's right to seek redress for violations of the overtime protections of federal and state law. Accordingly, Saint's selective disclosure of these facts was clearly for the sole purpose of conveying Defendants' intent to retaliate against anyone who chooses to exercise their rights to unpaid overtime.[4]

---

[3] Saint also suggests that employees are not entitled to overtime pay unless they make a "claim" for such compensation during their employment. *See* Ex. A. But no such requirement exists under the applicable wage laws.

[4] Retaliating against employees for exercising their rights to unpaid overtime is absolutely prohibited by the FLSA. 29 U.S.C. § 215.

Third, Saint instructs any employee who receives notice of this litigation – regardless of whether it is in a form approved by this Court – to contact him and his legal counsel.  *See* Ex. A. Saint, however, conveniently does not disclose Defendants' and his own personal financial interest in this litigation, that Project Managers are free to seek their own legal counsel, including Plaintiffs' counsel herein, or that this Court is charged with providing proper notice to class members about their rights.

Finally, Saint's disclosure of confidential settlement communications is a direct violation of the Federal Rules, Fed.R.Civ.P. 408(a), and all of his comments about this litigation violate a mutual confidentiality agreement to which Defendants are signatories.

By transmitting a mass email to all of the currently-employed proposed class members, the Defendants are clearly seeking to confuse and intimidate potential opt-in Plaintiffs in the hope that they will choose not to seek their unpaid wages or even attempt to learn more about their rights. Even worse, the timing of Defendants' email – coming literally hours after Plaintiffs sought court-approved notice – demonstrates their disregard for this Court's authority in facilitating a full, fair, and unbiased presentation of the case.  There simply is no other imaginable reason for Saint's communication, despite sending it under the guise of "alumni news."

The overall theme of Saint's communication was a slanted, biased and inaccurate portrayal of the facts and applicable law with no opportunity for rebuttal; exactly why well-established law dictates that the court oversee notice.  *Sperling v. Hoffman-LaRoche,* 493 U.S. 165, 170 (1989).  By tainting the notice process, Defendants have robbed this Court of its ability – perhaps irreparably – to provide fair and accurate notice to putative class members and an opportunity to vindicate their rights to unpaid wages.  Prompt and decisive action is

necessary to ameliorate the prejudice caused by Defendants' improper conduct and to guard against any similar misconduct in the future.

## III. CONCLUSION

Based on the blatantly improper communications that Defendants have already engaged in with the majority of putative class members, Plaintiffs request that this Court order the following relief:

(1) That Defendants be prevented from communicating with current or putative class members regarding this litigation;

(2) That the Court facilitate a corrective notice to current and putative class members which redresses the inappropriate *ex parte* communications by Defendants; and,

(3) Any such other and further relief to Plaintiffs as this Court deems just, proper and equitable.

Respectfully submitted,

CRYSTAL LITZ, et al., **Plaintiffs**
By their attorneys,

Dated:  May 25, 2011
*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan (BBO # 640716)
Brant Casavant (BBO #672614)
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA  02114
(617) 994-5800
sliss@llrlaw.com


*/s/ James B. Zouras*
James B. Zouras, admitted pro hac vice
Ryan F. Stephan, admitted pro hac vice
STEPHAN ZOURAS, LLP
205 North Michigan Avenue, Suite 2560
Chicago, Illinois 60601
(312) 233 1550
jzouras@stephanzouras.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2011, a copy of the foregoing was filed electronically on all counsel of record using the District Court's ECF filing system.

*/s/ Shannon Liss-Riordan*
SHANNON LISS-RIORDAN