**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CRYSTAL LITZ,<br>and all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>THE SAINT CONSULTING<br>GROUP, INC., P. MICHAEL SAINT<br>and PATRICK FOX,<br><br>                              Defendants. | Civil Action No. 1:11-cv-10693 |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION TO FILE SECOND AMENDED COMPLAINT**

Defendants The Saint Consulting Group, Inc. ("TSCG"), P. Michael Saint and Patrick Fox (collectively "Defendants"), hereby submit this opposition to Plaintiff's Motion to File Second Amended Complaint ("Motion to Amend"). As set forth more fully herein, Plaintiff's Motion to Amend must be denied because: (1) it is futile; (2) it fails to meet the prerequisites of Fed. R. Civ. P. 23(a) for class actions; and (3) it would unduly prejudice Defendants.

Initially, Plaintiff's Motion to Amend is futile because she does not have standing to bring a claim under G.L. c. 151, § 1A whereas: she did not work in Massachusetts; she is not a Massachusetts resident; and she does not have an employment agreement which contains a Massachusetts choice of law provision. Despite Plaintiff's assertion to the contrary, it would be unprecedented, improper and unconstitutional for this Court to apply G.L. c. 151, § 1A to individuals who do not have any contacts with Massachusetts other than being employed by a global corporation which maintains its headquarters in Massachusetts.

Moreover, Plaintiff's proposed Second Amended Complaint fails to meet Fed. R. Civ. P. 23(a)'s prerequisites.  The putative class does not meet the commonality requirement because this Court would be required to conduct a conflict of laws analysis for each individual putative member based upon the laws of the state where he or she actually worked.  Plaintiff has also failed to sufficiently plead Fed. R. Civ. P. 23(a)'s prerequisites for numerosity and adequacy of representation.  Finally, Defendants would be unduly prejudiced if Plaintiff's Motion to Amend were granted because her proposed amendment would transform this case into a class action litigation which would significantly increase the resources and complexity required for their defense.  Accordingly, Plaintiff's Motion to Amend must be denied with prejudice.

I.    **BACKGROUND**

    A.    **Procedural History**

This action was originally filed by Leigh Mayo on September 27, 2010 in the United States District Court for the Northern District of Illinois.  (Doc. 1).  In Mr. Mayo's Complaint, he alleged individual causes of action under Illinois state law as well as a collective action claim pursuant to the Fair Labor Standards Act ("FLSA") alleging that TSCG's project managers were entitled to unpaid overtime.  (*Id.*).  Crystal Litz consented to become a party plaintiff to this action on December 17, 2010 and Amanda Payne consented to do so on January 7, 2011.  (Docs. 19, 21).  On March 10, 2011, Ms. Litz was substituted for Mr. Mayo as the named representative plaintiff in this case.  (Doc. 31).

On March 15, 2011, Ms. Litz filed the Amended Complaint – the complaint of record in this action – which dropped Mr. Mayo's individual Illinois state law claims, but maintained the FLSA collective action claim.  (Doc. 38).  After the Illinois state law claims were dropped, the instant action was transferred to this Court from the U.S. District Court for the Northern District

of Illinois in April, 2011.  (Docs. 45-47).  On May 13, 2011, Plaintiff filed her "Motion to File

Second Amended Complaint" which now seeks to add a Massachusetts state law class action

claim for allegedly unpaid overtime.  (Doc. 52).  The proposed Massachusetts state law class

action claim is based upon essentially the same allegations used to support the prior Illinois state

law claims.  (Doc. 52).

### B.  Factual Background[1]

Plaintiff and the individuals she seeks to represent were employed by Defendants as

project managers.  (Plaintiff's proposed Second Amended Complaint at ¶ 3).  During the class

period, Plaintiff was not a resident of Massachusetts.  (*Id*. at ¶ 9).  Plaintiff was not employed by

Defendants in Massachusetts.  (*Id*. at ¶ 2).  Plaintiff does not allege that she or any of the putative

class members had employment agreements which contained a Massachusetts choice of law

provision.  (*Id*. at ¶¶ 1-15).  Plaintiff's proposed Second Amended Complaint does not contain

any allegations about any of the project managers working or residing in Massachusetts.  (*Id*.).

Since September 2007, TSCG has employed approximately 45 project managers in its offices

throughout the United States as well as its international offices.  (*See* Affidavit of Jeffrey R.

Gould, Esq. dated June 14, 2011 ("Gould Aff.") at ¶¶ 2-3).  A majority of TSCG's project

managers since 2007 have not worked in Massachusetts.  (*Id*. at ¶¶ 6-7).

## II.   ARGUMENT

### A.   Legal Standard

"Rule 15(a) of the Federal Rules of Civil Procedure provides in part that leave to amend

pleadings 'shall be freely given when justice so requires,' but amendment is not automatic."

*Brown v. Bank of America Corp.*, 2011 WL 1311278, * 5 (D. Mass. 2011) (*citing* Fed. R. Civ. P.

---

[1]      The facts contained in Plaintiff's proposed Second Amended Complaint are deemed undisputed for the
purposes of the Defendants' Opposition to Plaintiff's Motion to File Second Amended Complaint only.

15(a)).  "Reasons for denying leave include … undue prejudice to the opposing party, and futility

of amendment."  *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 47 (1st Cir. 2009) (*citing*

*Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "In determining whether the proposed amendment

to a complaint is futile, the Court must determine whether the amended complaint still fails to

state a claim upon which relief can be granted, and if it still fails, the district court acts within its

discretion in denying the motion to amend."  *Brown*, 2011 WL 1311278 at * 5 (*citing Abraham*

*v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 117 (1st Cir. 2009); *see also Adorno v.*

*Crowley Towing and Transportation, Co.*, 443 F.3d 122, 126 (1st Cir. 2006); *Glassman v.*

*Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).[2]

Furthermore, where a proposed amendment to assert a class action fails to meet the

mandatory prerequisites of Fed. R. Civ. P. 23(a), the Court should deny the motion to amend.

*See Landgraff v. GEMB*, 2007 WL 1101277, * 3 (E.D. Pa. 2007); *Dong v. Board of Educ. of*

*Rochester Cmty. Sch.*, 197 F.3d 793, 804 (6th Cir. 1999); *Smith v. Transworld Systems, Inc.*, 953

F.2d 1025, 1033 (6th Cir. 1992).  These prerequisites for class certification are: "(1) the class is

so numerous that joinder of all members is impracticable, (2) there are questions of law or fact

common to the class, (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class, and (4) the representative parties will fairly and adequately

protect the interests of the class."  Fed. R. Civ. P. 23(a).

### B.      Plaintiff's Motion To Amend Is Futile

Plaintiff's Motion to Amend seeks to add a Massachusetts state law claim alleging a

failure to pay overtime compensation in violation of G.L. c. 151, § 1A despite the fact that, as

---

[2]      Whereas Ms. Litz is the only named Plaintiff in this action, if a claim is futile with respect to her, then it cannot be maintained as a class action.  *See In re WellNx Marketing and Sales Practices Litigation*, 673 F. Supp. 2d 43, 55 (D. Mass. 2009) ("a plaintiff who lacks standing … cannot invoke the machinery of a class action, which is a creation not of law, but of the Federal Rules of Civil Procedure."); *see also Britt v. McKenney*, 529 F.2d 44, 45 (1st Cir. 1976).

Plaintiff cannot dispute: she did not work in Massachusetts; she was not a Massachusetts resident; and she did not have an employment agreement with a Massachusetts choice of law provision.  Plaintiff asks this Court to reach the unprecedented and unconstitutional conclusion that G.L. c. 151, § 1A applies to individuals across the globe who do not have any contacts with Massachusetts other than the singular fact that they are employed by a global corporation which maintains its headquarters in Massachusetts.  This contention is meritless for several reasons.

At the outset, Chapter 151 itself expressly limits its scope to individuals employed in Massachusetts.  Chapter 151's legislative history and courts interpreting Massachusetts' wage laws also dictate that it cannot be applied extraterritorially.  Moreover, courts throughout the United States have held that state wage laws cannot be applied extraterritorially.  Several courts have further recognized that an application of state wage law in the manner Plaintiff suggests would be unconstitutional.  Finally, the cases relied upon by Plaintiff are inapposite as they do not deal with individuals like Ms. Litz who are nonresidents, working outside of Massachusetts without an employment agreement containing a Massachusetts choice of law provision.

Accordingly, Plaintiff's proposed claim under G.L. c. 151, § 1A is not a claim for which relief can be granted.  Therefore, the Court should deny Plaintiff's Motion to Amend with prejudice whereas it seeks to add a claim which is futile.

        i.        <u>Chapter 151 Expressly Limits Its Scope To Employees In Massachusetts</u>

Chapter 151 – the chapter under which Plaintiff proposes to bring her new claim – expressly limits its scope to individuals who are employed in Massachusetts.  Specifically, the very first section of the chapter states that "[i]t is hereby declared to be against public policy for an employer to employ any person in an occupation ***in this commonwealth*** at an oppressive and unreasonable wage …."  G.L. c. 151, § 1 (emphasis added).  Chapter 151's limitation to

Massachusetts employees is further evidenced where it limits the powers of the commissioner and attorney general to investigate the wages of persons "employed in any occupation *in the commonwealth*."  G.L. c. 151, § 3(1) (emphasis added).  These powers entrusted to the attorney general are to enforce the same rights that an individual would otherwise have under Chapter 151.  Thus, it is axiomatic that an individual is also only allowed to bring a claim under Chapter 151 is he or she is "employed in any occupation in the commonwealth."

Here, the ***only*** allegation contained in Plaintiff's proposed Second Amended Complaint which relates to Massachusetts is that TSCG "is a Massachusetts corporation which is headquartered in Massachusetts."  (Doc. 52-1 at ¶ 10).  Plaintiff does not allege a single other fact connecting her, any of the putative class members, any of the Defendants or any of their alleged actions to Massachusetts.  Indeed, Plaintiff and a majority of the putative class members did not work in Massachusetts and in fact have no connection to Massachusetts other than the fact that the global corporation they work for is headquartered in Massachusetts.  Thus, Plaintiff and a majority of the putative class members were not "employed in any occupation in the commonwealth" and they clearly lack standing to bring a claim under Chapter 151.  G.L. c. 151, §§ 1, 3(1).  Accordingly, Plaintiff's Motion to Amend must be denied with prejudice whereas the claim she proposes to add is futile.

ii.   <u>Chapter 151 Cannot Be Applied Extraterritorially</u>

"Massachusetts statutes 'are presumed not to apply extraterritorially unless there is clear legislative intent.'"  *Telford v. Iron World Mfg., LLC*, 680 F. Supp. 2d 337, 342 (D. Mass. 2010) (*quoting Hadfield v. A.W. Chesterton Company*, 2009 WL 3085921, * 2 (Mass. Super. 2009)).  This presumption against the extraterritorial application of Chapter 151 must be upheld because the statute's legislative history reveals that it was meant to apply only to Massachusetts workers

as the Supreme Judicial Court of Massachusetts has recognized.  *See Swift v. Autozone, Inc.*, 441 Mass. 443, 447-450 (2004).  Specifically, the SJC noted that when the legislation to create Chapter 151 was being contemplated, "the Governor urged the Legislature to enact a 'State Fair Labor Standards Law' to provide overtime compensation for those ***Massachusetts workers*** not covered by Federal law."  *Id*. at 448-49 (*citing* 1960 Senate Doc. No. 1, at 22) (emphasis added). As the SJC acknowledged, "[t]he Legislature responded affirmatively" to the Governor by enacting G.L. c 151, § 1A.  *Id*. at 449.  Thus, as the SJC has noted, Chapter 151's legislative history is clear that it was designed to, and still does, apply only to Massachusetts employees.[3] Accordingly, the presumption against extraterritorial application of Chapter 151 cannot be rebutted.

Several courts have also recently recognized that the Massachusetts wage laws must not be applied extraterritorially whereas there was no legislative intent to rebut the recognized presumption against such.  *See Telford*, 680 F. Supp. 2d at 342; *Hadfield*, 2009 WL 3085921 at * 2.  This was a matter of first impression for the court in *Hadfield*.  2009 WL 3085921 at *2. There, the court held that the Massachusetts wage laws may not be applied to employees whose employment predominantly takes place outside of Massachusetts.[4]  *Id*.  The *Hadfield* court even reached this conclusion despite the fact that the plaintiff had an employment agreement with the defendant which contained a Massachusetts choice of law provision – something which Ms. Litz does not have.  *Id*. at * 2-3.  The court in *Telford* has since cited to the holding of *Hadfield* with

---

[3]       After thorough research, counsel represents that no cases were found which held that the legislative history of Chapter 151 permitted its extraterritorial application.
[4]       The fact that plaintiff worked outside of the United States was not the basis for the court's decision, but rather only that he worked outside of Massachusetts.  *Hadfield*, 2009 WL 3085921 at *2 ("The Court has found no legislative intent to rebut the presumption that the Wage Act does not apply ***outside of Massachusetts***.") (emphasis added).

approval, agreeing that the Massachusetts wage laws should not be applied extraterritorially.[5] 680 F. Supp. 2d at 342.

As both of these courts acknowledged, the appropriate inquiry for the applicability of Massachusetts wage laws is "whether the employee worked in Massachusetts." *Telford*, 680 F. Supp. 2d at 342; *Hadfield*, 2009 WL 3085921 at * 2. *Hadfield* further clarified that it is "the site of plaintiff's work that determines where the relevant conduct occurred, not where managerial decisions are made." 2009 WL 3085921 at * 5; *see also Priyanto v. M/S Amsterdam*, 2009 WL 175739, * 7 (C.D. Cal. 2009) ("Courts interpreting other states' wage laws have … focused on the situs of an employee's work in determining if a wage law applies, not where managerial decisions, actions, or inactions occur."). As these cases demonstrate, Massachusetts wage laws, including Chapter 151, should not be applied extraterritorially where an individual does not work in Massachusetts. Accordingly, whereas Plaintiff and a majority of the putative class members do not work or reside in Massachusetts, Plaintiff's Motion to Amend must be denied with prejudice.

### iii.   Other Courts Have Found That State Wage Laws May Not Be Applied Extraterritorially

While Plaintiff asks this Court to apply Chapter 151 to nonresidents who did not work in the state, regardless of other contacts, a thorough research of caselaw nationwide has not revealed any decisions in which a court has done so for any state's wage laws. *See Priyanto*, 2009 WL 175739 at * 7. Rather, a significant number of courts have found that the wage laws of various states cannot be applied extraterritorially. *See, e.g.*, *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 922 (D. Ariz. 2010) (Arizona's wage laws do not apply extraterritorially); *Cruz v.*

---

[5]     While the *Telford* court found that Massachusetts wage laws should not be applied extraterritorially, it found that they were applicable to the plaintiff in that case where it was undisputed that he worked three days per week in Massachusetts. 680 F. Supp. 2d at 342.

*Lawson Software, Inc.*, 2010 WL 890038, * 7-9 (D. Minn. 2010) (Minnesota's wage laws do "not apply extraterritorially to a plaintiff who is not a resident of Minnesota and has neither lived nor worked in Minnesota."); *Priyanto*, 2009 WL 175739 at * 7 (California's wage laws do not apply extraterritorially where plaintiffs did not work in California); *Sawyer v. Market America, Inc.*, 190 N.C. App. 791, 794–95 (2008) (North Carolina's wage laws do not apply extraterritorially); *Tomlinson v. Checkpoint Systems, Inc.*, 2008 WL 219217, * 9-10 (E.D. Pa. 2008) (Pennsylvania's wage laws do not apply extraterritorially); *Hamilton v. Water Whole Intern. Corp.*, 2007 WL 1832025, * 3 (W.D. Okla. 2007) (Oklahoma's wage laws do not apply extraterritorially); *Mitchell v. Abercrombie & Fitch*, 2005 WL 1159412, * 3 (S.D. Ohio 2005) (Ohio's wage laws don't apply extraterritorially where plaintiff worked outside of the state); *Vengurlekar v. Silverline Technologies, Ltd.*, 220 F.R.D. 222, 231 (S.D. N.Y. 2003) (New Jersey's wage laws do not apply extraterritorially); *Rathje v. Scotia Prince Cruises, Ltd.*, 2001 WL 1636961, * 9 (D. Me. 2001) (Maine's wage laws do not apply extraterritorially to employees who do not perform work in Maine even though their employer happens to be based there); *Glass v. Kemper Corp.*, 133 F.3d 999, 1000-01 (7th Cir. 1998) (Illinois' wage laws do not apply extraterritorially); *Vendetti v. Compass Environmental, Inc.*, 2006 WL 3694852, * 1-2 (N.D. Ill. 2006) (same); *Hammell v. Paribas*, 1993 WL 426844, * 1 (S.D. N.Y. 1993) (New York's Labor Law does not apply extraterritorially).  Thus, courts nationwide have recognized that it is improper to apply a state's wage laws extraterritorially.

     iv.    <u>Applying Chapter 151 Extraterritorially To The Putative Class Would Be Unconstitutional</u>

The Commerce Clause of the United States Constitution prohibits a state from regulating the working conditions of a nonresident who performs work and earns wages outside of the state. *Mitchell*, 2005 WL 1159412 at * 3.  "The Commerce Clause not only confers power on the

federal government, 'it is also a substantive restriction on permissible state regulation of interstate commerce.'" *Id.* (*quoting Dennis v. Higgins*, 498 U.S. 439, 447 (1991)).  The U.S. Supreme Court has long held that "[l]egislation is presumptively territorial and confined to limits over which the law-making power has jurisdiction." *Sandberg v. McDonald*, 248 U.S. 185, 195 (1918) (*citing American Banana Co. v. United Fruit Co.*, 213 U.S. 347 (1909)).  "No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived." *Hilton v. Guyot*, 159 U.S. 113, 163 (1895).  What Plaintiff asks this Court to do with respect to the application of Chapter 151 runs afoul of these long-standing constitutional principles.

Few courts have addressed this issue with respect to the extraterritorial application of a state's wage law to a nationwide putative class.  However, those courts that have looked at this issue have found that a blanket application of any state law to a putative class – as Plaintiff asks this Court to do – would violate the United States Constitution.  *See Cruz*, 2010 WL 890038 at * 7-9 (holding that blanket application of Minnesota law governing overtime to putative class members in various states would be unconstitutional); *Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243, 252-253 (W.D. N.Y. 2010) (finding that blanket application of New York law governing unpaid wages to putative class members in various states would violate the *Erie* doctrine); *Mitchell*, 2005 WL 1159412 at * 3 (finding that application of Ohio law governing overtime to nonresidents who work outside of the state would violate the Commerce Clause of the U.S. Constitution).  Accordingly, Plaintiff's requested blanket application of Chapter 151 to the putative class in this action would be unconstitutional and her Motion to Amend must therefore be denied with prejudice.

iv.    The Cases Cited To By Plaintiff Are Inapposite

Plaintiff's cited authority is inapposite and her reliance on the three cases cited within her

Motion to Amend is misplaced.  Plaintiff places most of her reliance on *Gonyou v. Tri-Wire*

*Engineering Solutions, Inc.*, 717 F. Supp. 2d 152 (D. Mass 2010) in an attempt to support her

argument that this court should apply Chapter 151 to all employees who neither live nor work in

Massachusetts, but who happen to have a global employer who is headquartered there.  In

*Gonyou*, the court held that a Massachusetts resident could bring a claim under G.L. c. 151, § 1A

against his Massachusetts employer for work performed in Connecticut where there was no

conflict of laws between Connecticut and Massachusetts.  *Id.* at 155.  Initially, it must be noted

that the *Gonyou* court did not consider the legislative history of Chapter 151 or its statutory

language referencing its applicability to individuals "employed in any occupation in the

commonwealth."[6]  Therefore, it did not perform a complete evaluation as to whether the

presumption against extraterritoriality can be rebutted – which, as explained above in Section

II.B.ii, it cannot.  *See Telford*, 680 F. Supp. 2d at 342.

Furthermore, the key component to the court's holding in *Gonyou* was that the plaintiff

was a "Massachusetts resident who allegedly lived in Massachusetts for the majority of the

period of his employment."  717 F. Supp. 2d at 155 (distinguishing cases cited by defendant,

stating "more importantly, the plaintiffs in those cases worked not only outside the state but were

generally non-residents (and sometimes even foreigners).").  The *Gonyou* court was also explicit

that it was not creating a general rule regarding the applicability of Chapter 151 to out-of-state

---

[6]      Indeed, the *Gonyou* court incorrectly stated that the statute does not refer to "any '*employee* in the commonwealth.'"  717 F. Supp. 2d at 155 (emphasis in original); *compare* G.L. c. 151, § 1 ("[i]t is hereby declared to be against public policy for an employer to employ **any person in an occupation in this commonwealth** at an oppressive and unreasonable wage …." ) (emphasis added); *see also* G.L. c. 151, § 3(1).

employees, stating: "As is eminently clear, this is a motion to dismiss and this ruling is ***strictly limited to the facts and circumstances of this case and this motion***."  *Id*. (emphasis added).

Unlike, the plaintiff in *Gonyou*, Ms. Litz and a majority of the putative class members are not Massachusetts residents.  In fact, some of the putative class members worked internationally – a situation which *Gonyou* states is expressly distinguishable from its holding.  717 F. Supp. 2d at 155 (referring to "the applicability of state statutes internationally, [as a] clearly a distinguishable situation.").  Thus, the facts and circumstances of the instant action are distinguishable from those in *Gonyou*.  Plaintiff's request for this Court to extend the holding in *Gonyou* is therefore without merit.

Plaintiff also cites two unpublished minute entry rulings as her only other support for the unprecedented request she has made to this Court.[7]  *See Davis v. The Footbridge Co., LLC*, Civil Action No. 09-11133-NG, minute entry (D. Mass. Oct. 5, 2010); *Solis v. Cymfony, Inc.*, Middlesex Civ. A. No. 10-03384 (Mass. Super. Mar. 7, 2011).  Prior to allowing the plaintiff in *Davis* to amend her complaint to add a claim under Chapter 151, Judge Gertner stated: "Defendants' strongest argument is that the amendment is that the amendment would be futile. Indeed, the plaintiff's amendment of a Massachusetts statutory claim is unusual."  Civil Action No. 09-11133-NG, minute entry (D. Mass. Oct. 5, 2010).  Judge Gertner then highlighted the fact that the plaintiff had an employment contract which "includes a Massachusetts choice of law provision."  *Id*.  This was a critical factor in the ruling.  Here however, neither Ms. Litz nor the putative class members had employment agreements with Massachusetts choice of law provisions.  Therefore, *Davis* is not controlling.

---

[7]     This Court should not consider the minute-entry rulings cited by Plaintiff as precedential given that they are unpublished rulings which are void of context and full discussion of the arguments raised by the parties.  *See Stanfield v. Island Operating Co.*, 2007 WL 3408285, * 4 (E.D. La. 2007) (finding that for a minute entry ruling, "its precedential weight is doubtful.").

Finally, the *Solis* ruling is also inapplicable to this case.  Initially, the minute entry does not provide any description of where the plaintiff resided during her employment, the level of contact she had with Massachusetts, what percentage of her work was performed in Massachusetts, or whether the defendant maintained facilities outside of Massachusetts.  *Solis*, Middlesex Civ. A. No. 10-03384 (Mass. Super. Mar. 7, 2011).  Given these unknowns, it is not possible to tell what possible relevance this ruling could have to the instant action.  Indeed, the one fact that can be discerned from the ruling is that the court was dealing with a claim under G.L. c. 149, § 148B – not a Chapter 151 claim as in this case.  *Id.*  Finally, this minute-entry ruling is void of any discussion of the arguments made by the parties, the context of the case and the precedent/reasons upon which the court issued its ruling.  *Id.*  Thus, *Solis* must not be given any precedential weight in this action.

Accordingly, Plaintiff has not provided any support for her unprecedented request that this Court allow her to bring a class action claim under Chapter 151 despite her and the majority of the putative class not being residents, not having worked in Massachusetts and not having employment agreements with a Massachusetts choice of law provision.  Therefore, her Motion to Amend must be denied with prejudice.

## C.   Plaintiff's Proposed Second Amended Complaint Fails To Meet The Prerequisites For A Class Action Under Fed. R. Civ. P. 23(a)

Plaintiff's Motion to Amend seeks to add a Massachusetts state law claim as a class action claim.  However, Plaintiff fails to meet the prerequisites for class actions under Fed. R. Civ. P. 23(a).  Initially, the proposed class does not meet Fed. R. Civ. P. 23(a)'s commonality requirement given that the putative members were employed in various states and countries by TSCG.  In the event that this Court agrees with Plaintiff's unprecedented position that Chapter 151 can apply extraterritorially to nonresidents who do not work in Massachusetts, it would still

be required to conduct a conflict-of-laws analysis for each individual putative class member based upon the laws of the state in which he or she actually worked.  As courts have recognized, this fails to meet Fed. R. Civ. P. 23(a)'s commonality requirement.

Furthermore, Plaintiff has failed to adequately plead that the proposed class is so numerous that joinder of all members is impracticable.  Finally, Plaintiff failed to sufficiently plead that she can fairly and adequately protect the interests of the class.  Where a proposed amendment to assert a class action fails to meet these prerequisites, courts should deny the motion to amend.  *Landgraff*, 2007 WL 1101277 at * 3; *Dong*, 197 F.3d at 804; *Smith*, 953 F.2d at 1033. Thus, this Court must deny Plaintiff's Motion to Amend with prejudice.

   i.  <u>The Proposed Class Does Not Meet Fed. R. Civ. P. 23(a)'s Commonality Requirement</u>

In order to maintain a class action claim under Fed. R. Civ. P. 23(a), Plaintiff must be able to meet the Rule's commonality requirement.  Plaintiff cannot do so here because the Court would be required to conduct a conflict of laws analysis for every state an individual putative class member worked in. Thus, each putative class member has his or her own individual essential questions of law which are not shared by all other members of the putative class. Accordingly, Plaintiff cannot meet Fed. R. Civ. P. 23(a)'s commonality requirement and her Motion to Amend must therefore be denied with prejudice.

Courts have found that Fed. R. Civ. P. 23(a)'s commonality requirement is not met where the substantive law of multiple states must be applied.  *See Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 231 (S.D. N.Y. 2002); *see also Pilgrim v. Universal Health Card, LLC*, 2010 WL 1254849, * 4 (N.D. Ohio 2010) (class action cannot be maintained where the laws of multiple states, which are implicated, differ).  In particular, courts have repeatedly found that the commonality requirement of Fed. R. Civ. P. 23(a) cannot be met where the wage laws of

multiple states are implicated. *See Scherer v. Combined Ins. Co. of America*, 253 F.R.D. 40, 43 (D. Conn. 2008) ("the questions of law are not common to the subclass because 36 state wage statutes are implicated."); *Neary v. Metropolitan Property and Casualty Insurance Co.*, 472 F. Supp. 2d 247, 251-53 (D. Conn. 2007) (Fed. R. Civ. P. 23(a)'s commonality requirement not met where wage laws of 50 states were implicated); *Glewwe v. Eastman Kodak Co.*, 2006 WL 1455476, * 4 (W.D. N.Y. 2006) (Fed. R. Civ. P. 23(a)'s commonality requirement not met where wage laws of 35 states were implicated); *Vengurlekar*, 220 F.R.D. at 231 (finding that where it was "far from clear that the New Jersey statute applies to all of the wage claims of the proposed class members", plaintiff failed to meet Fed. R. Civ. P. 23(a)'s commonality requirement for a nationwide putative class).

While Plaintiff's proposed Second Amended Complaint does not provide any allegations concerning where the putative class members worked, it is indisputable that the project managers work in various states throughout the United States and in other countries as well – with a majority working and residing outside of Massachusetts. So even if the Court finds that it is possible to apply Chapter 151 to a nonresident who does not work in Massachusetts – which Defendants argue it is not – the Court would have to first conduct a conflict of law analysis for each state in which that individual actually worked.[8] Indeed, the *Gonyou* case – which Plaintiff bases her argument upon – demonstrates that such an inquiry is a threshold issue for any potential extraterritorial application of Chapter 151. 717 F. Supp. 2d at 155 (finding that G.L. c. 151, § 1A did not conflict with Connecticut law before holding that Massachusetts resident could maintain a claim under the statute). Thus, Plaintiff's proposed amendment would require this Court to apply and analyze the overtime laws of a substantial number of states – something

---

[8] These analyses will inevitably reveal that not all of the putative class members will have standing to bring a claim under Chapter 151 because, as the Supreme Judicial Court of Massachusetts has recognized, "[m]any states do not have overtime laws comparable to Massachusetts …." *Swift*, 441 Mass. at 450, n. 11.

which does not fall within the commonality requirements of Fed. R. Civ. P. 23(a). Accordingly, whereas Plaintiff's proposed amendment fails to meet the commonality requirements of Fed. R. Civ. P. 23(a), it fails and her Motion to Amend should be denied with prejudice.

ii.       <u>The Proposed Class Is Not So Numerous That Joinder Is Impracticable</u>

While Plaintiff's proposed Second Amended Complaint identifies TSCG's project managers as the putative class she seeks to represent, it does not contain any allegations concerning the size of this class. Indeed, Plaintiff's proposed Second Amended Complaint does not assert any allegations as to why the putative class would be so numerous as to render joinder impracticable. Thus, Plaintiff's proposed amendment fails on the basis of her insufficient pleading alone.

Despite Plaintiff's failure to plead such, Defendants acknowledge that TSCG has employed approximately 45 project managers since September, 2007. (*See* Gould Aff. at ¶ 2). Many courts have recognized that putative classes of this size, or larger, do not meet the numerosity requirement of Fed. R. Civ. P. 23(a). *See, e.g., Pruitt v. City of Chicago, Illinois*, 472 F.3d 925, 926 (7th Cir. 2006) (class of fewer than 40 employees did not meet numerosity requirement); *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 132 (1st Cir. 1985) (subclass of 49 members did not meet numerosity requirement); *In re Colonial Partnership Litigation*, 1993 WL 306526, * 42-43 (D. Conn. 1993) (class of 50 members did not meet numerosity requirement); *Block v. First Blood Associates*, 125 F.R.D. 39 (S.D. N.Y. 1989) (class of 59 members did not meet numerosity requirement); *John Doe I v. Meese*, 690 F.Supp. 1572, 1573-74 (S.D. Tex. 1988) (class between 59 and 62 members did not meet numerosity requirement); *Uniondale Beer Co., Inc. v. Anheuser-Busch, Inc.*, 117 F.R.D. 340, 345 (E.D. N.Y. 1987) (class of approximately 100 did not meet numerosity requirement). Thus, whereas Plaintiff has failed to demonstrate that

the putative class is so numerous as to render joinder impracticable, she has failed to meet the prerequisites of Fed. R. Civ. P. 23(a).  Accordingly, her Motion to Amend should be denied with prejudice.

        iii.    <u>Plaintiff Has Failed To Sufficiently Plead That She Can Fairly And Adequately Protect The Interests Of The Proposed Class</u>

Plaintiff's proposed Second Amended Complaint does not contain any allegations about her ability to fairly and adequately represent the putative class members.  Rather, it only asserts that Plaintiff and the putative class members were employed as project managers who were allegedly paid on an hourly basis without receiving overtime.  These contentions do not demonstrate that Ms. Litz is a proper representative of the putative class with the ability to fairly and adequately represent the putative members' interests.  Accordingly, the proposed Second Amended Complaint fails to sufficiently plead the prerequisites of Fed. R. Civ. P. 23(a).

As several courts have recognized, a complaint fails to meet the prerequisites of Fed. R. Civ. P. 23(a) where it does not sufficiently plead the named plaintiff's ability to represent a class. *See Worthen v. Oklahoma Dept. of Corrections*, 2007 WL 4563665, * 4 (W.D. Okla. 2007) ("Here, Plaintiff has failed to plead, let alone establish, any factual or legal basis for finding that he would be an adequate class representative for all purported class members."); *Alvarado Morales v. Digital Equipment Corp.*, 669 F.Supp. 1173, 1186 (D. Puerto Rico 1987) ("Plaintiffs also fail to plead facts sufficient to show that they are in a position to adequately represent or protect the interests of the class.")  The United States Supreme Court has also acknowledged the necessity for precise pleadings with respect to class action claims under Fed. R. Civ. P. 23(a). *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982) (*citing Johnson v. Georgia Highway Exp., Inc.*, 417 F.2d 1122, 1125-27 (5th Cir. 1969)).  In particular it

recognized that specificity is needed in order to be able determine whether the representation is adequate as required by the Rule. *Id.*

Whereas Plaintiff's proposed Second Amended Complaint fails to sufficiently plead her ability to fairly and adequately represent the putative class, it fails to meet the prerequisites of Fed. R. Civ. P. 23(a). Accordingly, Plaintiff's Motion to Amend should be dismissed with prejudice.

### D. Defendants Will Be Unduly Prejudiced If Plaintiff's Motion To Amend Is Granted

Defendants will be significantly prejudiced if Plaintiff's Motion to Amend is granted. Plaintiff's proposed amendment seeks to transform this case into a class action lawsuit under Fed. R. Civ. P. 23. Such an amendment would substantially alter these proceedings to Defendants' detriment. *See Daugherty v. American Express Co.*, 2010 WL 27735116, * 3-4 (W.D. Ky. 2010) (holding that "allowing Plaintiff to amend him complaint to include these class claims would be prejudicial."). Granting "[l]eave to amend here would do far more than allow plaintiff to fully litigate all the legal dimensions of [her] initial action, it would permit plaintiff to transform [her] case into something entirely new." *Mississippi Ass'n of Cooperatives v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D. D.C. 1991) (affirming denial of leave where plaintiff sought to add class action claims); *see also Graham v. Progressive Direct Insurance Co.*, 271 F.R.D. 112, 123 (W.D. Pa. 2010). While Plaintiff has currently brought a collective action claim under the FLSA, the scope and complexity of litigating that claim is significantly different than that of a class action claim under Fed. R. Civ. P. 23.

For an FLSA collective action, putative class members must affirmatively opt in to the action in order to participate. However, class actions under Fed. R. Civ. P. 23 proceed as if all putative members are part of the lawsuit unless they otherwise opt out. Here, only one putative

member other than Plaintiff – Ms. Payne – has opted into the collective action.  Thus, the scope

of the discovery in the instant action is currently limited to those two individuals who have

chosen to participate in the lawsuit.  This scope will drastically expand to approximately 45

individuals if Plaintiff is permitted to add a class action claim.  Such an automatic expansion of

discovery will significantly prejudice Defendants.  *See Weber v. Sanborn*, 526 F. Supp. 2d 135,

142 (D. Mass. 2007) (denying plaintiff's motion to amend where newly added claim would

necessitate additional discovery); *Kovian v. Fulton County National Bank and Trust Co.*, 1992

WL 106814, * 2 (N.D. N.Y. 1992) ("A motion to amend a pleading will also be denied if the

amendment would cause undue prejudice to the opposing party, by requiring additional

discovery or unnecessarily complicating the litigation.").

This significant prejudice to Defendants is particularly unwarranted where Plaintiff's

proposed amendment merely seeks to add a new legal theory based upon the same facts

contained in the original complaint.  Plaintiff – whose counsel is the same as that of Mr. Mayo –

provides no reason whatsoever as to why the proposed claim was not included in the original

Complaint.  Where a plaintiff seeks to add claims which could have been brought at the time of

the original complaint, it is appropriate for a court to deny leave to amend.  *See Mogel v. UNUM

Life Ins. Co. of America*, 677 F. Supp. 2d 362, 365 (D. Mass. 2009) (*citing Acri v. Int'l Ass'n of

Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986)).  Indeed, "amendments

to assert new theories are not reviewed favorably when the facts and the theory have been known

to the party seeking amendment since the inception of the cause of action."  *Acri*, 781 F.2d at

1398; *see also Messier v. Southbury Training School*, 1999 WL 20907, * 3 (D. Conn. 1999);

*Phaneuf v. Tenneco, Inc.*, 938 F.Supp. 112, 116 (N.D. N.Y. 1996) (Court denied motion for leave

to amend where "nothing new has come to light in between the time that the original complaint

was filed and the time the motion to amend was made."). Thus, whereas Defendants will be unduly prejudiced from Plaintiff's proposed amendment – which could have been brought at the time of her original complaint – this Court should deny the Motion to Amend.

## III.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court deny the Plaintiff's Motion to Amend in its entirety.

Defendants respectfully request a hearing on Plaintiff's Motion for a Protective Order.

Respectfully submitted,

THE SAINT CONSULTING GROUP, INC.; P. MICHAEL SAINT AND PATRICK F. FOX

By their attorneys,

/s/ Sean P. O'Connor_____
Robert P. Joy, (BBO # 254820)
rpjoy@morganbrown.com
Sean P. O'Connor (BBO # 673835)
soconnor@morganbrown.com
MORGAN, BROWN & JOY, LLP
200 State Street, 11th Floor
Boston, MA 02109-2605
Telephone: (617) 523-6666

Dated:  June 14, 2011

## CERTIFICATE OF SERVICE

I, Sean P. O'Connor, hereby certify that this document was filed through the ECF system on June 14, 2011, and that a true paper copy of this document will be sent to those indicated as non registered participants on the Notice of Electronic Filing by first class mail on the same date.

Dated:  June 14, 2011                          /s/ Sean P. O'Connor_____
                                                Sean P. O'Connor