## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CRYSTAL LITZ,
and all others similarly situated,

                                        Plaintiffs,

v.                                                          Civil Action No. 1:11-cv-10693

THE SAINT CONSULTING
GROUP, INC., P. MICHAEL SAINT
and PATRICK FOX,

                                        Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants The Saint

Consulting Group, Inc. ("TSCG"), P. Michael Saint and Patrick Fox (collectively "Defendants")

hereby submit this Memorandum of Law in Support of their Motion for Summary Judgment.

## I.    INTRODUCTION

The Plaintiffs Crystal Litz ("Litz") and Amanda Payne ("Payne") (collectively

"Plaintiffs") are former employees of TSCG.[1]  In their positions as Project Managers, both

Plaintiffs were responsible for performing professional-level work, which included organizing

and running political campaigns for and against land-use projects in various parts of the country.

Plaintiffs were extremely well-paid, each receiving just under $200,000 per year in

compensation.[2]  Following acrimonious separations from their employment with TSCG in March

---

[1]       Litz was hired as a Project Manager in January 2005 and Payne was hired as a Project Manager in June 2003.  Litz was promoted to the Division Manager position in January 2006 and subsequently demoted back to the Project Manager position in October 2009.  For purposes of this lawsuit, Litz is only claiming unpaid overtime wages in her position as a Project Manager following her October 2009 demotion.

[2]       Litz earned $196,743.08 in 2009 and was on pace to earn approximately $169,500 in 2010 while Payne earned $181,765.28 in 2008 and $191,472.50 in 2007.

2010 and October 2008 respectively, Litz and Payne consented to join this action, both claiming they were improperly classified as exempt under the Fair Labor Standards Act ("FLSA") and therefore deprived of overtime pay when they worked more than 40 hours in a week.[3]

The FLSA was enacted to assist the unprotected and lowest paid of the nation's workforce—those employees who lacked "sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n. 18 (1945). Consistent with the legislative purpose of the law, most highly paid workers like the Plaintiffs are not subject to FLSA's overtime requirements because they qualify for the "highly compensated" employee exemption. Indeed, the text of the regulation applicable in this case, states "that a high level of compensation is a 'strong indicator of an employee's exempt status ....'" 29 C.F.R. § 541.601(c). This rule is set out in the United States Department of Labor's ("DOL's") regulation specifically covering highly paid employees, 29 C.F.R. § 541.601(the "highly compensated exemption").[4]

It is not in dispute that both Plaintiffs customarily and regularly performed job duties meet the required duties tests for highly compensated employees. Thus, the only issue for the Court is whether the Plaintiffs' substantial compensation as Project Managers meets the minimal compensation thresholds for the applicable exemption – the highly compensated exemption.

The FLSA's highly compensated exemption, unlike other white-collar overtime exemptions, requires that Plaintiffs receive at least $100,000 in "total annual compensation" to qualify for the exemption. The highly compensated exemption also mandates that this

---

[3]    This action was originally filed by Leigh Mayo on September 27, 2010. (Doc. 1). Litz first consented to become a party plaintiff to this action on December 17, 2010 and was eventually substituted for Mayo as the sole named representative plaintiff on March 10, 2011. (Docs. 19, 31). Payne consented become an opt-in plaintiff in this action on January 7, 2011. (Doc. 21).
[4]    For purposes of Defendants' Motion for Summary Judgment only, Defendants contend Plaintiffs' exempt status under the highly compensated exemption. Defendants reserve their rights to further assert that Plaintiffs also satisfied the requirements of other FLSA exemptions.

compensation must include at least $455 per week (about 23.7% of the total wages) paid on a salary basis.  Both Plaintiffs received total annual remuneration of close to $200,000 and therefore easily satisfy the $100,000 total annual compensation requirement.  In addition, a portion of their compensation consisted of a guaranteed fixed salary of $1,000 per week (annualized to $52,000 per year) – more than double the $455 minimum required under the highly compensated exemption.  There is no dispute of fact that this amount was guaranteed regardless of the quantity or quality of the work Plaintiffs performed and was never subject to reduction.[5]  Indeed, both Plaintiffs testified that they were always entitled to this weekly salary regardless of the number of hours they worked in a week.  Moreover, Payne received this $1,000 weekly base amount, without any incentive bonus compensation, during multiple weeks in which she worked few or no hours at all.

Because Plaintiffs are high wage earners who satisfy both the compensation and the duties requirements for the highly compensated exemption, they are exempt from the FLSA's overtime requirement.  Accordingly, summary judgment should be awarded in Defendants' favor and Plaintiffs' claims should be dismissed in their entirety.

## II.   FACTUAL BACKGROUND

Defendants hereby incorporate and make reference to Defendants' Statement of Material Facts As To Which No Genuine Issue Remains To Be Tried ("Facts"), filed herewith.[6]

---

[5]     As Project Managers, Plaintiffs' compensation package comprised of two main components: (1) a guaranteed base salary, and (2) an additional nondiscretionary incentive bonus.  With respect to their guaranteed base salary, Plaintiffs were entitled to and paid a base salary of $1,000 per week ($52,000 annually) at all times relevant to this action.  This base salary was guaranteed to Plaintiffs at all times, and it was never subject to reduction regardless of the quantity or quality of work they performed.  On top of their guaranteed base salary, Plaintiffs were also entitled to an additional incentive bonus compensation which they received for hours billed beyond a certain threshold in a week.

[6]     These facts are deemed undisputed only for the purposes of Defendants' Motion for Summary Judgment.

### III.   <u>LEGAL STANDARD</u>

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party is entitled to judgment as a matter of law where the nonmoving party fails to make a sufficient showing on an essential element of his case for which he bears burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"Although a court may not weigh the evidence or make credibility determinations in granting summary judgment, the court may end a suit before trial if the court determines that, taking the facts and reasonable inferences therefrom in the light most favorable to the non-moving party, no reasonable juror could find for that party."  *Taylor v. Gallagher*, 737 F.2d 134, 137 (1st Cir. 1984).  Simply put, the moving party "must put the ball in play, averring an absence of evidence to support the nonmoving party's case."  *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations and citation omitted).  Once the moving party has satisfied its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue.  *Celotex Corp.*, 477 U.S. at 324.

### IV.   <u>ARGUMENT</u>

#### A.   <u>The FLSA And Its Regulations Protect The Nation's Lowest Paid Workers And A High Level Of Compensation Is A Strong Indicator That White-Collar Workers Like Plaintiffs Are Indeed Exempt From the Overtime Requirement.</u>

"The FLSA of 1938, as amended, establishes a federal minimum wage" and "requires overtime pay – payment at the rate of one and one-half of the regular rate – for all hours worked in excess of a forty-hour work week."  *Hines v. State Room, Inc.*, 665 F.3d 235, 241 (1st Cir. 2011) (citing 29 U.S.C. §§ 201–219).  "The overtime compensation requirement, however, does

not apply with respect to all employees." *Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156, 2162 (2012). Rather, "[t]he statute also sets forth various exemptions from the overtime requirement." *Hines*, 665 F.3d at 241. For example, the FLSA "exempts workers 'employed in a bona fide executive, administrative, or professional capacity.'" *Christopher*, 132 S.Ct. at 2162 n. 1 (quoting 29 U.S.C. § 213(a)(1)). In addition, in a regulation promulgated in 2004, the FLSA provides an exemption from its overtime requirements to "highly compensated employees." *See Allen v. Coil Tubing Services, L.L.C.*, 846 F. Supp. 2d 678, 710 (S.D. Tex. 2012) (citing 29 C.F.R. § 541.601).[7]

When the FLSA was first enacted in 1938, it "was designed to 'aid the unprotected, unorganized, and *lowest paid* of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves *a minimum subsistence wage*.'" *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004) (finding insurance agents exempt, noting that they were paid on a salary basis where they "are guaranteed a minimum level of compensation; that they are paid more, depending on their sales success, does not negate their safety net.") (quoting *Brooklyn Sav. Bank*, 324 U.S. at 707 n. 18 (1945)) (emphasis added). The legislative history of the FLSA further demonstrates that it was created for the purpose of protecting low-wage earners who were struggling to earn a fair day's pay.

In his May 24, 1937 letter to Congress urging it to enact the FLSA, President Franklin Delano Roosevelt stated: "Our nation so richly endowed with natural resources and with a capable and industrious population should be able to devise ways and means of insuring to all our able-bodied men and women a *fair* day's pay for a *fair* day's work." H.R. Rep. No. 101-260,

---

[7]        As the U.S. Supreme Court recently noted "The DOL promulgated such regulations in 1938, 1940, and 1949. In 2004, following notice-and-comment procedures, the DOL reissued the regulations with minor amendments. The current regulations are nearly identical in substance to the regulations issued in the years immediately following the FLSA's enactment." *Christopher*, 132 S.Ct. at 2162 (internal citations omitted).

at p. 9 (1989), *reprinted in* 1989 U.S.C.C.A.N. 696-97 (emphasis added).  Moreover, the House

and Senate Labor Committees that held hearings on the issues to be addressed by the FLSA

further stated: "the existence in industries engaged in commerce, or in the production of goods

for commerce, of labor conditions detrimental to the maintenance of the *minimum standards of*

*living necessary for health, efficiency and general well-being*, required immediate action to

correct, and as rapidly as possible eliminate, conditions in such industries, *without substantially*

*curtailing employment or earning power*."  H.R. Conf. Rep. No. 75-2738, at 28 (1937) (emphasis

added).

Furthermore, the text of the FLSA itself also shows that the statute's purpose is to protect

low-wage earners, providing in relevant part:

> the existence, in industries engaged in commerce or in the production of goods for
> commerce, of labor conditions detrimental to *the maintenance of the minimum*
> *standard of living necessary for health, efficiency, and general well-being of*
> *workers* (1) causes commerce and the channels and instrumentalities of commerce
> to be used to spread and perpetuate such labor conditions among the workers of
> the several States; (2) burdens commerce and the free flow of goods in commerce;
> (3) constitutes an unfair method of competition in commerce; (4) leads to labor
> disputes burdening and obstructing commerce and the free flow of goods in
> commerce; and (5) interferes with the orderly and fair marketing of goods in
> commerce.

29 U.S.C. § 202(a) (emphasis added).  The U.S. Supreme Court has also found that this is the

goal of the FLSA, stating that the statute's purpose

> . . . is to exclude from interstate commerce goods produced for the commerce and
> to prevent their production for interstate commerce, under conditions detrimental
> to *the maintenance of the minimum standards of living necessary for health and*
> *general well-being*; and to prevent the use of interstate commerce as the means of
> competition in the distribution of goods so produced, and as the means of
> spreading and perpetuating such substandard labor conditions among the workers
> of the several states.

*U.S. v. Darby*, 312 U.S. 100, 109-110 (1941) (emphasis added); *see also Christopher*, 132 S.Ct. at 2173 (noting that employees who earn an average of more than $70,000 per year "are hardly the kind of employee that the FLSA was designed to protect.").

**B.** **Plaintiffs Were Highly Compensated Employees Who Fall Within the Relaxed Standard That Renders Them Exempt From The FLSA's Overtime Requirements**

Although the FLSA requires employers to pay overtime to many employees who work more than forty hours in a work week, certain white-collar workers, including "highly compensated employees" are exempt from the overtime requirement. *See* 29 C.F.R. § 541.601. While exacting rules creating a presumption of non-exempt status cover lower paid executive, administrative and professional workers, the DOL has promulgated a far less demanding test covering workers, like the Plaintiffs, who earn six-figure incomes. The highly compensated exemption applies to employees who: (1) have a total annual compensation of at least $100,000, and (2) customarily and regularly perform at least one of the duties of an executive, administrative, or professional employee. *Id.*; *see Allen*, 846 F. Supp. 2d at 710 (quoting 29 C.F.R. § 541.601) (citing *In re Novartis Wage and Hour Litigation*, 611 F.3d 141, 146–47 (2nd Cir. 2010)). Plaintiffs have conceded that their duties met the "duties" prong of this exemption. (Facts at ¶¶ 10-11). Thus, the only issue here is if Plaintiffs meet compensation part of this test.

**i.** **Plaintiffs Were Paid $1,000 Per Week On A Salary Basis**

Compensation is paid on a salary basis if it is comprised of "a predetermined amount" that is paid during each pay period and it is "not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a); *see also Auer*, 519 U.S. at 456; *Rooney v. Town of Groton*, 577 F. Supp. 2d 513, 523-24 (D. Mass. 2008). As the evidence in the record shows, it is undisputed that Plaintiffs' compensation package included a guaranteed minimum base pay that satisfies both of these elements. Specifically, at all times relevant to this

action, Plaintiffs received a guaranteed minimum base salary of $1,000 per week, which was not subject to any deductions related to the quality or quantity of their work.  (Facts at ¶¶ 20-55).

As Project Managers with TSCG, Plaintiffs were entitled to a guaranteed weekly base salary of $1,000 which constituted one part of their total compensation package.  (Facts at ¶¶ 20-55).  Both Plaintiffs acknowledge that they were entitled to a $1,000 guaranteed weekly base salary and that they never received less than their $1,000 weekly salary throughout their employment as Project Managers.[8]  (*Id*. at ¶¶ 34-55).  The Plaintiffs agreed that were entitled to this $1,000 salary each week regardless of the number of hours they worked and the quality of the work they performed.  (*Id*.).  Indeed, Payne received the payment when she took time off or worked minimal or no hours, but still received her guaranteed $1,000 salary without any incentive bonus compensation.  (*Id*. at ¶¶ 43-50).  Consistent with the highly compensated exemption, the Plaintiffs' salary was not their predominant source of income, however, it cannot be disputed that Plaintiffs' total annual compensation included at least $455 per week paid on a salary basis.

### i.  Plaintiffs Earned Significantly More Than $100,000 In Total Annual Compensation

The prerequisites for meeting the highly paid employee exemption's compensation threshold are simply expressed; the Plaintiffs must receive at least $100,000 in "total annual compensation."  29 C.F.R. § 541.601(a).  The regulations specify that the "[t]otal annual compensation may also include commissions, nondiscretionary bonuses *and other nondiscretionary compensation* earned during a 52-week period."  *Id*. at § 541.601(b)(1) (emphasis added).  Thus, nondiscretionary wages paid of any kind – whether paid on a salary

---

[8]     In their depositions, both Plaintiffs refer to the $1,000 weekly salary as a "stipend."  However, "stipend" is simply a term used at TSCG which represented the guaranteed base salary portion of Project Managers' compensation package.  (Facts at ¶¶ 39-40).

basis or by any method – may be included in calculating the total compensation.  *Id*.  (only fringe benefits, board and lodging are not counted as nondiscretionary wages).

It is undisputed that Litz earned $196,743.08 in 2009 and that she was on pace to earn approximately $169,500 in 2010 – the only years covered by her claim during which she worked as a Project Manager.[9]  (*Id*. at ¶¶ 56-61).  Similarly, Payne earned $181,765.28 in 2008 and $191,472.50 in 2007.  (*Id*.).  Indeed, independent of TSCG's records, both Plaintiffs admitted in their depositions that TSCG regularly paid them more than $100,000 annually as Project Managers for TSCG.  (*Id*.).

> **ii.     As Highly Compensated Employees, The Reasonable Relationship Test Does Not Apply To Plaintiffs' Compensation Package**

Plaintiffs have also claimed that they were improperly classified as exempt because they believe their total compensation did not have a "reasonable relationship" to their guaranteed base salaries based on a regulation applicable to lower-paid workers.  However, the reasonable relationship test set forth in § 604(b) is inapplicable under the highly compensated employees exemption.  *Compare Bell v. Callaway Partners, LLC*, 394 Fed. Appx. 632 (11th Cir. 2010) (the stricter salary test for non-highly compensated employees was met where the amount of employee bonuses fluctuated based on the cumulative number of hours billed . . . "as long as there is a non-deductible minimum, additional compensation on top of the non-deductible salary is permissible") (internal citation omitted).  As highly paid employees, Plaintiffs earned close to $200,000 each, which included at least $455 per week paid on a guaranteed salary basis.  There is no additional requirement under the highly compensated exemption for Plaintiffs' additional compensation to bear a reasonable relationship to their guaranteed salary.

---

[9]     This was the only time during the limitations period when Litz was employed as a Project Manager.  She had worked previously in a higher level management position but was demoted in October 2009.  (Facts at ¶¶ 4-7).

The "reasonable relationship" test that Plaintiffs refer to is applicable to exemptions affecting employees who earn less than $100,000 and are required to be compensated on a salary basis but have their earnings "computed on an hourly, a daily or a shift basis …."  29 C.F.R. § 541.604(b).  In addition, even if applicable to highly paid workers, it is obvious that this reasonable relationship test does not have any application to Plaintiffs' guaranteed base salaries as there is no dispute that they were not calculated on an hourly, daily or shift basis.  *Id*.  Rather, their guaranteed base salaries consisted of a predetermined $1,000 weekly amount which was not dependent upon, or related in any way, to the hours that they worked.  (Facts at ¶¶ 20-55).  Thus, the reasonable relationship test is entirely inapplicable to Plaintiffs' guaranteed base salaries.

The reasonable relationship test is similarly inapplicable to the remainder of the Plaintiffs' compensation package because their guaranteed base salaries satisfy the minimal compensation requirements of the highly compensated exemption.  It simply cannot be ignored that the language of the highly compensated exemption requires only that a small part of an employee's total annual compensation be paid on a salary basis.  Indeed, the highly compensated exemption expressly authorizes employers to pay only about one-quarter of their non-discretionary compensation on salary basis.  In this case, Plaintiffs' substantial guaranteed compensation – $1,000 weekly base salaries – is more than double the required amount.  Imposing a requirement that their additional compensation bear some further proportional relationship to their guaranteed salary is contrary to the plain language of the highly compensated exemption and would lead to absurd results.[10]

Furthermore, the language of the exemption precludes analysis of Plaintiffs' substantial compensation as a whole to assess whether their guaranteed salaries had a reasonable

_____

[10]	If taken to its logical extension, Plaintiffs' reasonable relationship argument would lead to absurd results where highly paid workers are concerned, entitling overtime to a highly compensated employee earning a $500,000 yearly salary, with supplemental earnings of over $2.5 million (a 20% salary to total income ratio).

relationship to their total income because their compensation structure is expressly sanctioned by the highly compensated exemption. The regulation contemplates compensation structures for highly compensated employees that are substantially more weighted toward additional non-discretionary, pay than Plaintiffs'. 29 C.F.R. § 541.601. Per the express terms of this exemption, an employee earning $100,000 annually need only have $23,660, or 23.7% of their total income, paid on a salary basis to be exempt under the highly compensated exemption. The balance of the compensation, $76,340, is expressly permitted to be paid as "nondiscretionary compensation." Here, Plaintiffs total annual compensation was approximately $190,000 annually with $52,000 of that amount paid on a salary basis. (Facts at ¶¶ 20-62). Thus, Plaintiffs received approximately 27.4% of their total annual compensation on a salary basis – nearly 4% more than was contemplated as a baseline by the highly compensated exemption.[11]

### iii.   The Plaintiffs Received A Weekly Guarantee That Was Paid On A Salary Basis As Required Under The Highly Compensated Employee Exemption

Plaintiffs were guaranteed and received a minimum base salary payment of at least $1,000 each and every week that they worked as Project Managers. This is consistent with the applicable regulation that requires only that *part* of Plaintiffs' compensation be paid on a flat salary basis. 29 C.F.R. § 541.601(b). Specifically, the highly compensated exemption is met so long as Plaintiffs' total annual compensation includes at least one component that amounts to at least $455 weekly earnings ($23,660 per year) that are paid on a salary basis. *Id*.; *see also Henry v. Quicken Loans Inc.*, Docket No. 2:04-cv-40346, 2009 WL 596180, * 10 (E.D. Mich. 2009) ("Under the regulations, the difference between $100,000 and the minimum salary can be made on a salary basis, *or* may include commissions, non-discretionary bonuses, and other non-

---

[11]   If the FLSA required a closer relationship between the guaranteed and non-guaranteed components of highly compensated employees' income, as Plaintiffs suggest, then the DOL would have set forth a higher standard in the highly compensated exemption. However, it chose not to do so; thereby proving that the highly compensated employee exemption is met without exacting the same reasonable relationship applicable to lower-paid employees.

discretionary compensation.") (emphasis added).  Because Plaintiffs' compensation package included at least $455 weekly guaranteed salary, and actually included more than double that amount, the highly compensated exemption's compensation test is met.

Notwithstanding this, based on their view that regulations applicable to lower paid workers apply to them, Plaintiffs contend that they were improperly classified as exempt employees because they were not paid on a "salary basis."  This position is flawed and not supported in the record.  Furthermore, Plaintiffs ignore the fact that the standard for highly compensated employees does not require their entire compensation to be paid on a salary basis.

Here it is undisputed that Plaintiffs' compensation included a predetermined annual salary of $52,000, in the form of a $1,000 weekly guarantee that was not subject to deductions; hence both plaintiffs indisputably were guaranteed well in excess – more than double – the minimum required $455 per week on a salary basis.[12]  (Facts at ¶¶ 20-55).  Indeed, both Plaintiffs admit that they were always entitled to this weekly salary regardless of the number of hours they worked in a week.  (*Id*. at ¶¶ 34-55).  This fact is borne out by the record evidence that Payne received compensation on a salary basis of $1,000 repeatedly, when she did not earn incentive bonus pay.  (*Id*. at ¶¶ 43-50).  The text of the applicable regulation makes clear that no further analysis of the remaining compensation is required.

1. <u>The FLSA Regulations Themselves Express That Only A Part Of An Employee's Total Annual Compensation Need Be Paid On A Salary Basis In Order To Qualify For The Highly Compensated Employee Exemption</u>

---

[12]    *See Havey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 165-166 (2nd Cir. 2008) (holding that where an employer provided employees with a "predetermined amount well in excess of the regulatory threshold" its "two-part salary scheme was not designed for the purpose of circumventing the requirements of the FLSA.").

The language of the DOL's regulations expressly mandates that the highly compensated exemption is satisfied so long as one part of a highly compensated employee's compensation to be paid on a salary basis.[13]   The applicable regulation provides in relevant part:

> An employee with *total annual compensation of at least $100,000* is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified in subparts B, C or D of this part.

29 C.F.R. § 541.601(a) (emphasis added).  The regulations further state that "'[t]otal annual compensation' must *include* at least $455 per week paid on a salary or fee basis." *Id*. at § 541.601(b)(1) (emphasis added).  The text of these provisions mandate only that part of the total annual compensation must be paid on a salary basis in order to satisfy the exemption's requirements. *See Christopher*, 132 S.Ct. at 2170.  Consistent with the objectives of the FLSA, unlike other white-collar exemptions, the highly compensated exemption does not restrict the method of payment to strictly that of a salary or fee basis.

The difference in wording of the FLSA regulations include a dollar threshold as to "total annual compensation" which does not require that this be "compensated on a salary basis."  29 C.F.R. § 541.601(a); *compare* 29 C.F.R. § 541.100(a) (requiring that an executive employee be "*Compensated on a salary or fee basis*").  Unlike the other so-called white-collar exemptions, the highly compensated exemption requires that a salary constitute only a small portion of the employee's total annual compensation (approximately 23.7%); the standard for the other exemptions requires a more demanding analysis of the employee's overall method of

---

[13]       "Pursuant to the statute's express delegation of rulemaking authority, the Secretary has issued detailed regulations, following notice-and-comment procedures, defining each of the exemptions ….." *Hines*, 665 F.3d at 241 (citing 29 C.F.R. Part 541; 29 U.S.C. § 213(a)(1); *Reich v. John Alden Life Insurance Co.*, 126 F.3d 1, 7-8 (1st Cir. 1997)); *see also Christopher*, 132 S.Ct. at 2165 (where the regulations themselves are validly promulgated, they are entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)); *Norceide v. Cambridge Health Alliance*, 814 F. Supp. 2d 17, 23 (D. Mass. 2011) ("review of the FLSA is guided by principles of statutory construction").

compensation.[14]   Unlike the other white-collar exemptions, the highly compensated exemption

begins with the apparent presumption of exempt status, expressly stating that "a high level of

compensation is a 'strong indicator of an employee's exempt status.'"   29 C.F.R. § 541.601(c));

*Wood v. Kinetic Systems, Inc.*, Docket No. 1:10–CV–001, 2011 WL 1484117, * 2 (D. Idaho

2011) ("In 2004, the implementing regulations were amended to add a presumption that the

exemption from overtime compensation applied to high wage-earners.").

Indeed, the DOL has specifically addressed the fact that a different compensation

standard is to be applied to the highly compensated exemption, as compared to the other

exemptions.[15]   Specifically, the DOL has stated:

> highly compensated employees must receive at least the same base salary
> throughout the year as required for exempt employees *under the standard
> exemption tests*, while allowing highly compensated employees to receive
> additional income in the form of commissions and nondiscretionary bonuses.

DOL Field Operations Handbook, § 22g01(b)(1) (Nov. 29, 2010) (available at

http://www.dol.gov/whd/FOH/FOH_Ch22.pdf) (emphasis added).   The DOL has also said that:

> the "total annual compensation" must include at least $455 per week paid on a
> salary or fee basis.  This change will ensure that highly compensated employees
> will receive at least the same base salary throughout the year as required for
> exempt employees *under the standard tests*, while still allowing highly
> compensated employees to receive additional income in the form of commissions
> and nondiscretionary bonuses.

---

[14]      Like the highly compensated exemption, the DOL has promulgated other FLSA exemptions that do not
require that employees are paid on a salary basis.  *See* 29 C.F.R. § 541.600(e) (providing a list of occupations,
including teachers and employees practicing law or medicine, where employees may be classified as exempt from
the FLSA's overtime requirements without being paid on a salary basis); 29 C.F.R. § 541.400(b)(providing an
exemption for computer employees paid on an hourly basis); and 29 C.F.R. § 541.500 (stating that the salary basis
requirements do not apply to outside sales employees).

[15]      "Where the rule to be interpreted 'is a creature of the Secretary's own regulations … [its] interpretation of
it is, under [Supreme Court] jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation.'"
*Fast v. Applebee's Intern., Inc.*, 638 F.3d 872, 878 (8th Cir. 2011) (quoting *Auer v. Robbins*, 519 U.S. 452, 461
(1997)).   "This type of *Auer* deference is appropriate for DOL interpretations of its own regulations, where the
regulations 'g[i]ve specificity to a statutory scheme the Secretary [of the DOL] [i]s charged with enforcing and
reflect[ ] the considerable experience and expertise the Department of Labor ha[s] acquired over time with respect to
the complexities of the Fair Labor Standards Act.'"  *Id*. (quoting *Gonzales v. Oregon*, 546 U.S. 243, 256-57 (2006)).

69 Fed. Reg. No. 79, 22175 (2004) (emphasis added).  The DOL even expressly states that highly compensated employees, unlike other exempt employees, may earn "additional income" which is not subject to those standard exemption tests – including the salary basis test.  *Id*.  This is of course precisely what Defendants have done in the instant case.  Thus, the DOL distinguishes between the compensation standards for the highly compensated exemption versus the more demanding standards applicable to the other lower-paid workers' exemption tests.  *Id*.

The dichotomy between the compensation tests is further evidenced by the DOL's use of the word "include" in the highly compensated exemption.  *See* 29 C.F.R. § 541.601(b)(1) ("'Total annual compensation' must *include* at least $455 per week paid on a salary or fee basis.") (emphasis added).  The U.S. Supreme Court recently held that an FLSA regulation's use of the word "include" "is significant because it makes clear that the examples enumerated in the text are intended to be illustrative, and not exhaustive."  *Christopher*, 132 S.Ct. at 2170 (citing *Burgess v. U.S.*, 553 U.S. 124, 131, n. 3 (2008)).[16]  Here, the use of the term "includes" in the regulation undoubtedly demonstrates that the highly compensated exemption does not require *all* of an employee's total annual compensation to be paid on a salary basis.

In fact, after stating after that total annual compensation must "*include* at least $455 per week paid on a salary or fee basis," the regulation further indicates that it "may also *include*" compensation that is not paid on a salary basis such as "commissions, nondiscretionary bonuses and other nondiscretionary compensation."  29 C.F.R. § 541.601(b)(1) (emphasis added).  The DOL has stated that "under the highly compensated employee test, all nondiscretionary bonuses and any other form of nondiscretionary compensation earned during the year are counted,

---

[16]     While Plaintiffs may contend that the Court is required to construe the highly compensated exemption narrowly, such a requirement "is inapposite where, as here, [the Court is] interpreting a general definition that applies throughout the FLSA."  *Christopher*, 132 S.Ct. at 2172 n. 21 (in reference to interpreting the regulations' use of the word "include") (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

*together with the employee's salary*, towards the $100,000 threshold." DOL Field Operations

Handbook at § 22g01(b)(2) (emphasis added). Thus, it is clear that that while all of an

employee's annual compensation must be considered in determining whether the $100,000

threshold is met, the entire compensation package need not meet the FLSA's salary basis test;

rather, the total compensation need only *include* one component paid on a salary basis.

The flexibility of the compensation component of the highly compensated exemption is

evident in many other respects. For example, the regulation provides that employers may

provide a "make up" payment to employees at the end of the year to ensure that the employees

meet the $100,000 total annual compensation threshold needed to qualify. *Id*. at § 541.601(b)(2).

Notably, the regulation does not provide any restriction whatsoever on these payments; the

regulation makes no reference to salary basis and do not require that they have any relationship

to an employee's actual salary. *Id*. The highly compensated exemption also permits employers

to pay employees who do not work an entire year only a pro-rata portion of the $100,000

compensation based on the number of weeks employed. *Id*. at § 541.601(b)(3). Thus, the

exemption imposes no requirement that pro-rata payments meet an annual salary minimum. *Id*.

Hence, the regulation does not require that highly compensated employees have some

proportion or *all* of their annual compensation paid on a salary basis. Rather, it need only

*include* a portion which is paid on a salary basis. *See Hicks v. Mercedes-Benz U.S. Intern., Inc.*,

Docket No. 7:08–cv–0536–LSC, 2012 WL 1566140, * 2 (N.D. Ala. 2012) (noting that plaintiffs

overlooked the significance of the word "includes" in the highly compensated exemption, which

represents a less-demanding standard than the executive exemption).

    2. <u>The Purpose And Legislative History Of The FLSA And The Highly
Compensated Employee Exemption Further Demonstrate That Only A
Part Of An Employee's Total Annual Compensation Must Be Paid On A
Salary Basis In Order To Qualify For The Exemption</u>

The Court's "review of the FLSA is guided by principles of statutory construction; [its] interpretation 'depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.'" *Norceide*, 814 F. Supp. 2d at 23 (quoting *Dolan v. Postal Service*, 546 U.S. 481, 486 (2006)); *see also Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1072 (1st Cir. 1995)). Review of the purpose and legislative history of the FLSA and the highly compensated exemption is particularly significant in this case, because it further supports the conclusion that employees need only have a "safety net" portion of their total annual compensation paid on a salary basis to qualify for the highly compensated exemption.

As discussed above, the FLSA was enacted for the purpose of protecting low-wage earners who were struggling just to earn a fair day's pay – a group which clearly does not include the Plaintiffs who earned nearly $200,000 annually, $52,000 of it on a guaranteed salary basis. *See Darby*, 312 U.S. at 109-110; *Hogan*, 361 F.3d at 625; H.R. Rep. No. 101-260, at p. 9 (1989), *reprinted in* 1989 U.S.C.C.A.N. 696-97; H.R. Conf. Rep. No. 75-2738, at 28 (1937); *see Altemus v. Federal Realty Inv. Trust*, 490 Fed. Appx. 532, 537 (4th Cir. 2012) (An employee's "high salary itself creates doubt as to whether she falls within the scope of the intended protected class in light of the legislative goals of the FLSA …. '[a]lthough salary alone is not dispositive under the FLSA, ... the FLSA was meant to protect low paid rank and file employees.'") (quoting *Darveau v. Detecon, Inc.*, 515 F.3d 334, 338 (4th Cir. 2008)); *see also Christopher*, 132 S.Ct. at 2173 (noting that employees who earn an average of more than $70,000 per year "are hardly the kind of employee that the FLSA was designed to protect."). That the FLSA is focused on the protection of low-wage workers is further evidenced by the DOL's enactment of the highly compensated exemption through its 2004 implementing regulations. *See* 29 C.F.R. § 541.601.

This exemption was created "to add a presumption that the exemption from overtime compensation applied to high wage-earners." *Wood*, 2011 WL 1484117 at * 2 (citing 29 C.F.R. § 541.601). This is because the DOL "reasons that a high level of compensation is a 'strong indicator of an employee's exempt status.'" *Id*. at * 3 (quoting 29 C.F.R. § 541.601(c)).

The DOL itself explained the rationale for the highly compensated exemption at the time of its implementation, stating:

> Employees earning $100,000 or more per year are at the very top of today's economic ladder, and setting the highly compensated test at this salary level provides the Department with the confidence that … *in the rare instances when these employees do not meet all other requirements of the regulations, a determination that such employees are exempt would not defeat the objectives of section 13(a)(1) of the Act* ….

69 Fed. Reg. No. 79, 22174 (2004) (internal quotations omitted) (emphasis added).

Given that the objective of the FLSA is to protect low wage workers, the DOL imposed far less exacting standards than those affecting lower-paid employees. This fact has been well-established through judicial review of the duties prong of the highly compensated exemption. *See e.g. Karna v. BP Corp. North America, Inc.*, Docket No. H–12–0101, 2013 WL 1155485, * 17 (S.D. Tex. 2013) (noting that the highly compensated exemption requires a less-exacting standard than the computer professional exemption); *Allen*, 846 F. Supp. 2d at 710; *Hicks*, 2012 WL 1566140 at * 2 (noting that the highly compensated exemption has a less-demanding standard than the executive exemption); *Wood*, 2011 WL 1484117 at * 2. Similarly, this rationale equally explains why the DOL created a less-demanding compensation standard for the highly compensated exemption. For where an employee earns more than $100,000 annually – a portion of which is paid on a guaranteed salary basis – there can be no dispute that, in the words of President Roosevelt, they are receiving "a fair day's pay for a fair day's work."

18

There is no dispute that Plaintiffs' compensation structure satisfies the requirements of the highly compensated exemption.  Thus, Plaintiffs were properly exempted from the FLSA's overtime requirements and summary judgment should be entered in Defendants' favor.

### C.  Payne's Claim Is Time-Barred Because She Cannot Demonstrate That Defendants Willfully Violated The FLSA

The statute of limitations for FLSA claims seeking unpaid overtime wages is generally two years unless the claim is one "arising out of a willful violation" – for which a third year is added.  29 U.S.C. § 255(a).  Given that Payne's employment with TSCG ended in October 2008 – more than two years before she joined this action as an opt-in plaintiff – her claim must be dismissed as a matter of law unless she can prove that Defendants willfully violated the FLSA.[17] There is no evidence in the record to suggest that Defendants committed any willful violations. (Facts at ¶¶ 63-73).  Rather, the undisputed evidence shows that Defendants did not know nor should they have known that the substantial compensation package for TSCG's Project Managers violated the FLSA – particularly since it clearly conforms with the FLSA.

To establish that a violation of the Act is willful, a plaintiff must prove that "the employer either knew or showed reckless disregard for ... whether its conduct was prohibited by the statute."  *Stokes v. BWXT Pantex, L.L.C.*, 424 Fed. Appx. 324, 326 (5th Cir. 2011) (internal quotations omitted); *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988). Hence, even if the employer acts unreasonably, but not recklessly, in determining its obligations under the FLSA, the resulting actions are not willful in nature because such a finding demands more than mere negligence.  *See McLaughlin*, 486 U.S. at 133, 135; *Lopez v. Corporacion Azucarera de P.R.*, 938 F.2d 1510, 1515 (1st Cir. 1991) (finding FLSA violations are willful

---

[17]     Payne filed her opt-in consent form in this action on January 7, 2011.  (Facts at ¶ 13).  When, as here, Payne was not a named plaintiff when this collective action was filed, her action under the FLSA "shall be consider to be commenced . . . on the subsequent date on which such written consent is filed in the court in which the action was commenced."  29 U.S.C.§§ 255(a) and 255(b).

based on unreasonableness alone); *see also Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2nd Cir. 2009) ("[m]ere negligence is insufficient" to establish willfulness). "The burden of showing that an FLSA violation was 'willful' falls on the plaintiffs." *Id.* at 326 (citing *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001)).

On this record, Plaintiffs cannot possibly meet their burden of establishing that Defendants reasonable interpretation evidences willfulness. Indeed, there is no record evidence demonstrating that Defendants knew or should have known that their classification of Project Managers as exempt employees was improper. (Facts at ¶¶ 63-73). On the contrary, the evidence shows that shortly after the DOL created the new highly compensated exemption in 2004, TSCG contacted various authorities, including legal counsel, in an effort to ensure that its new Project Manager compensation structure complied with these new regulations. (*Id.*). At that time the highly compensated exemption was then newly promulgated, there was no other interpretive guidance from the DOL or the courts as to the exemption's compensation requirements other than the language of the regulation itself. Indeed, today there remains no guidance suggesting TSCG incorrectly classified these employees. Rather, TSCG's compensation package for its Project Managers undoubtedly complies with the highly compensated exemption. Accordingly, Payne's claims are time-barred and should be dismissed as a matter of law.

## V.  CONCLUSION

For the reasons set forth above, Defendants respectfully request that their Motion for Summary Judgment be granted in its entirety, and that Plaintiffs' Complaint be dismissed with prejudice, and for other such and further relief as this Court deems appropriate.

Respectfully submitted,

THE SAINT CONSULTING GROUP, INC.; P.
MICHAEL SAINT AND PATRICK F. FOX

By their attorneys,

*/s/ Sean P. O'Connor*_____
Robert P. Joy, (BBO # 254820)
rpjoy@morganbrown.com
Sean P. O'Connor (BBO # 673835)
soconnor@morganbrown.com
MORGAN, BROWN & JOY, LLP
200 State Street, 11th Floor
Boston, MA 02109-2605
Telephone: (617) 523-6666

Dated:  May 20, 2013

## CERTIFICATE OF SERVICE

I, Sean P. O'Connor, hereby certify that this document was filed through the ECF system
on May 20, 2013, and that a true paper copy of this document will be sent to those indicated as
non-registered participants on the Notice of Electronic Filing by first class mail on the same date.

Dated:  May 20, 2013                          */s/ Sean P. O'Connor*_____
                                              Sean P. O'Connor